# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| **VALERIE PAGE,** *as Personal Representative of Sean Page,*     )<br>)<br>)<br>**PLAINTIFF**     )<br>)<br>**v.**     )<br>)<br>**AMTRAK, INC.,**     )<br>)<br>**DEFENDANT**     ) | **CIVIL NO. 2:14-CV-548-DBH** |

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This lawsuit arises out of the tragic death of pedestrian Sean Page when Amtrak's Downeaster passenger train struck him as he crossed railroad tracks in Biddeford. The incident is captured on a video recording from the front of the locomotive. Although there is some uncertainty as to the exact state of the real estate title at the location where the fatality occurred,[1] I conclude after oral argument on January 19, 2016, and supplemental submissions that, under Maine statutes and the Maine Law Court's clear and consistent precedents, there is no genuine issue of material fact that affects liability and that Amtrak is entitled to summary judgment on the wrongful death claim of the personal representative of Page's estate. I therefore **GRANT** Amtrak's motion for summary judgment.

---

[1] The parties have engaged in vexatious assertions toward each other on the topic of real estate title and admissible evidence, but I conclude that ultimately I do not need to resolve that particular controversy.

**SUMMARY JUDGMENT STANDARD**

"Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23. Once the moving party points to the absence of evidence to support the nonmoving party's case, id. at 325, the nonmoving party must respond by making a showing "sufficient to carry [her] burden of proof at trial," id. at 327.

**FACTS**

Amtrak operates its passenger trains under an agreement with Pan Am Railways.[2] Def.'s Statement of Material Facts ¶ 2 (ECF No. 34) ("Def.'s SMF"); Pl.'s Reply to Def.'s Statement of Material Facts ¶ 2 (ECF No. 50) ("Pl.'s RSMF"). Amtrak does not own or maintain the area where the accident occurred.[3] Def.'s

---

[2] Amtrak's operating agreement is with Springfield Terminal Railway Company, the Boston and Maine Corporation, Portland Terminal Company, and Maine Central Railroad Company (collectively referred to as "Pan Am Railways"). Def.'s SMF ¶ 2; Pl.'s RSMF ¶ 2. The plaintiff denied Amtrak's paragraph 2 because, the plaintiff says, the operating agreement "only authorized and provided Amtrak the right of the use of rail lines for which [Pan Am Railways] had ownership or access rights to transfer." Pl.'s RSMF ¶ 2. But the plaintiff did not deny the existence of the operating agreement and indeed referred to obligations under it. See, e.g., Pl.'s RSMF ¶ 3 (regarding the indemnification provision). I therefore take the existence of the operating agreement as established.

[3] The plaintiff qualified this assertion by stating that although "Amtrak may not 'own or maintain the area where the accident occurred' it operates over the track and has an operational agreement in which it indemnifies the railroad for any deaths that occur in relation to the Defendant's operation over the tracks." Pl.'s RSMF ¶ 3. But nowhere does the plaintiff assert that Amtrak has any ownership interest in the area where the accident occurred, and I therefore take that absence of Amtrak ownership as established.

SMF ¶ 3; Pl.'s RSMF ¶ 3. Ownership of both the tracks and the underlying property at the scene of the accident is in dispute;[4] the plaintiff continues to press its contention that neither Amtrak nor Pan Am Railways has provided sufficient documentation to prove that Pan Am has title to the fee or right of way at the location where the accident occurred.[5]

The video that captured the incident shows that Sean Page was crossing the tracks at an angle with his head down when the Downeaster train struck him. Def.'s SMF ¶¶ 10, 11; Pl.'s RSMF ¶¶ 10, 11. The location is not a designated crossing,[6] Def.'s SMF ¶ 39; Pl.'s RSMF ¶ 39, but there is a dirt and

---

[4] At oral argument, the plaintiff's lawyer disputed ownership of the tracks. The summary judgment record does not seem to support that position. Amtrak asserted that Boston & Maine Corporation owned the railroad tracks, the right of way, and an area outside the rails on each side of the tracks. Def.'s SMF ¶ 1. The plaintiff denied that assertion, but focused on whether Boston & Maine owned the right of way, not on who owned the tracks themselves. Pl.'s RSMF ¶ 1. However, the distinction does not affect my ruling.

[5] When Amtrak received the plaintiff's summary judgment response challenging the status of the real estate title, ECF No. 51, it submitted a title examiner's opinion as an exhibit attached to its reply, ECF No. 54-1. The plaintiff objected on the grounds of timeliness. ECF No. 55. At oral argument on the summary judgment motion, I indicated that I would accept the "late" submission (I did not want to rule on a summary judgment record that was likely to be corrected at trial) but that the plaintiff could file a response to the title opinion, and the plaintiff then filed an "Opposing Title Opinion and Title Search." ECF No. 59. That filing attacked the basis for Amtrak's title opinion that Pan Am Railways or Boston & Maine Corporation had a fee interest or right-of-way interest at the location of the fatality, but it also failed to establish that anyone else had any interest. Viewing the evidence in the light most favorable to the plaintiff, the most I can say is that the record before me does not establish who owns the fee or the right of way at that location. (It may seem strange that the parties have not established the status of title given the decades of use of the railway lines, but it appears that the title status derives from events and documents in 1871, and that there is difficulty in locating the operative documents from that era in railroad files, the registry of deeds, or municipal records.) I find it unnecessary to rule on the latest dispute over the appropriateness of Amtrak's response to the plaintiff's title filing. See Def.'s Resp. to Pl.'s Opposing Title Op. (ECF No. 60); Pl.'s Obj. to Def.'s Resp. to Pl.'s Opposing Title Op. (ECF No. 62).

[6] The plaintiff denied that the location is not a designated crossing by citing to one small section of Sergeant Normand Allaire's deposition testimony. Normand Allaire Dep. June 23, 2015 (ECF No. 34-6). After testifying that vehicles could not cross the tracks there, Allaire gave an ambiguous answer, as often happens with many witnesses in response to a leading question like the following: "Q. It's certainly not a designated grade crossing; is that correct? A. No." Id. at 26. There was no follow-up. Reading Sergeant Allaire's testimony in context, and watching the video of the incident (at oral argument the plaintiff withdrew objection to my consideration of the video), I conclude that the plaintiff's denial is unsupported by the record.

3

gravel path adjacent to the railroad property, packed down from pedestrian and bicycle traffic,[7] Pl.'s Statement of Additional Facts ¶ 20 (ECF No. 50) ("Pl.'s SAF"); Def.'s Reply to Pl.'s Statement of Additional Facts ¶ 20 (ECF No. 54) ("Def.'s RSAF"). People used this pathway as a shortcut.[8] Pl.'s SAF ¶ 23; Def.'s RSAF ¶ 23. Cutts Street is on one side of the tracks and West Cutts Street is on the other side. Def.'s SMF ¶ 36; Pl.'s RSMF ¶ 36. Page lived with his wife Valerie Page on West Cutts Street; his home was approximately fifty feet from the railroad tracks. Def.'s SMF ¶¶ 35, 37; Pl.'s RSMF ¶¶ 35, 37.

The Biddeford police officer who responded to the fatality testified that, although "[i]t would be a guess," the incident occurred "[m]aybe a hundred yards" from the Main Street railroad crossing in Biddeford.[9] Def.'s SMF ¶ 12; Pl.'s RSMF ¶ 12; Scott R. Labrecque Dep. at 20, June 23, 2015 (ECF No. 34-4). As the Downeaster train approached the Main Street crossing, the train engineer first saw Page in the distance beyond the Main Street crossing, walking from the engineer's left hand side toward the tracks at an angle. Def.'s SMF ¶¶ 9, 10; Pl.'s RSMF ¶¶ 9, 10. As soon as the engineer saw Page, he engaged the train's whistle and continued to engage it as Page maintained his route toward the tracks with his head down. Def.'s SMF ¶ 10; Pl.'s RSMF ¶ 10. When Page did not respond

---

[7] The defendant qualified its response to the plaintiff's additional material fact paragraph 20, asserting that the statement was not accurately reflected in the record cited. Def.'s RSAF ¶ 20. I have rephrased the plaintiff's statement to accurately reflect the record citation.

[8] The defendant qualified this assertion by stating that it does not dispute that Sergeant Allaire so testified, but added that the area where the incident occurred was not a designated crossing, that the area is not paved, that there is no paved road going over the train tracks, that there are no signs at the pathway directing pedestrians to cross at that area, that there are no railroad lights or railroad gates located in that area, and that Sergeant Allaire testified that it is a trespass of railroad tracks to cross an undesignated crossing. Def.'s RSAF ¶ 22. I state the fact most favorably to the plaintiff.

[9] I have incorporated the plaintiff's qualification into the defendant's assertion.

to the train's whistle, the engineer made an emergency application of the train's braking system.  Def.'s SMF ¶ 10; Pl.'s RSMF ¶ 10.  From the time that the engineer first observed Page to the time the engineer applied the emergency brake, Page walked with his head down, never acknowledged the train, and never changed his gait or the manner in which he walked toward the tracks.  Def.'s SMF ¶ 11; Pl.'s RSMF ¶ 11.

### PROCEDURAL HISTORY, JURISDICTION AND APPLICABLE LAW

The personal representative of Page's estate on behalf of his surviving children sued the City of Biddeford and Amtrak for wrongful death in Maine Superior Court.  The City of Biddeford moved to dismiss the complaint against it arguing immunity under the Maine Tort Claims Act, 14 M.R.S.A. § 8103 (2003 & Supp. 2105), and after the court granted Biddeford's motion to dismiss, Amtrak removed the case to this court, claiming subject-matter jurisdiction pursuant to both diversity jurisdiction, 28 U.S.C.A. § 1332 (2012 & Supp. 2015), and federal-question jurisdiction (on account of Amtrak's status, more than one-half of its capital stock being owned by the United States), id. §§ 1331, 1349. The parties agree that Maine law governs their dispute.  See Ricci v. Alternative Energy Inc., 211 F.3d 157, 165 (1st Cir. 2000).[10]

---

[10] When jurisdiction is based on federal-question jurisdiction, a district court is usually called upon to interpret and apply federal law.  See Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986).  In another case involving Amtrak, the United States District Court for the District of New Jersey addressed the issue of what substantive law applies pursuant to section 1349 by stating that
> Congress was silent concerning tort liability in the statutes creating and funding Amtrak.  There is "no federal general common law." Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).  Sensibly, therefore, "a federal court applies state law when it decides an issue not addressed by federal law, regardless of source from which the cause of action is deemed to have arisen for the purpose of establishing federal jurisdiction." A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp., 62 F.3d 1454, 1463 (D.C.Cir. 1995).

**ANALYSIS**

The wrongful death claim lies in negligence, and under Maine law "[a] cause of action for negligence has four elements: (1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury." Bell ex rel. Bell v. Dawson, 2013 ME 108, ¶ 17, 82 A.3d 827, 831-32 (quotation marks omitted). The burden of proof on all of these elements remains with the plaintiff, Irish v. Gimbel, 2000 ME 2, ¶ 8, 743 A.2d 736, 738, even at summary judgment, Celotex Corp., 477 U.S. at 323.

### *Amtrak's Duty*

The critical issue is what duty, if any, Amtrak owed Page at the time of the fatal injury. "A duty is an obligation, to which the law will give recognition and effect, to conform to a particular manner of conduct toward another." Budzko v. One City Ctr. Assocs. Ltd. P'ship, 2001 ME 37, ¶ 10, 767 A.2d 310, 313 (quotation marks omitted). "[T]he existence of a duty and the scope of that duty are questions of law." Alexander v. Mitchell, 2007 ME 108, ¶ 14, 930 A.2d 1016, 1020. Maine law does not impose a "general obligation to protect others from harm not created by the actor." Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc., 1999 ME 144, ¶ 12, 738 A.2d 839, 844.

The plaintiff advances several arguments for recognition of a duty. I address each of the plaintiff's arguments in turn.[11]

---

Hollus v. Amtrak Northeast Corridor, 937 F. Supp. 1110, 1114 (D.N.J. 1996), aff'd, 118 F.3d 1575 (3d. Cir. 1997); see also Walker v. Nat'l R.R. Passenger Corp., 703 F. Supp. 2d 495, 501 (D. Md. 2010) (quoting the same).

[11] The sequence in which I address the plaintiff's arguments does not necessarily correspond to the sequence in which the plaintiff advanced them.

6

First, the plaintiff argues that Amtrak owed Page a duty because Page had a right to cross the tracks by virtue of a public prescriptive easement and thus had a "superior possessory right to cross where the accident occurred." Pl.'s Mem. of Law in Opp'n of Def.'s Mot. for Summ. J. at 5 (ECF No. 51) ("Pl.'s Opp'n"). The plaintiff, however, has failed to establish to whom or what entity Page's asserted "claim of right" is adverse. See S.D. Warren Co. v. Vernon, 1997 ME 161, ¶ 5, 697 A.2d 1280, 1282 ("The party asserting a prescriptive easement must prove continuous use, for at least twenty years *under a claim of right adverse to the owner*, with his knowledge and acquiescence, or by a use so open, notorious, visible and uninterrupted that knowledge and acquiescence will be presumed." (emphasis added) (quotation marks omitted)); see also Glidden v. Belden, 684 A.2d 1306, 1318 (Me. 1996) ("[T]he [party] had no intent to use adversely to an owner because they believed they were using a public road to which all members of the public had rightful access.").

From the summary judgment record, the evidence suggests that one of two entities may hold title to the property (either in fee or a right of way)—Pan Am (through Boston & Maine) or the City of Biddeford. If title to the location of the accident is with Pan Am Railways (or Boston & Maine), Maine legislation provides that "[n]o title to any real estate or any interest in real estate may be acquired against any railroad corporation by adverse possession, however exclusive or long continued." 23 M.R.S.A. § 6025 (1992 & Supp. 2015). Thus any custom by Biddeford residents to cross the tracks at this location, however continuous or notorious, could not create a prescriptive easement. Bangor & Aroostook R.R.

Co. v. Daigle, 607 A.2d 533, 535 (Me. 1992). If, on the other hand, the City of Biddeford retained title, Page similarly could not acquire a public prescriptive easement from the municipality. See Portland Water Dist. v. Town of Standish, 2006 ME 104, ¶ 17, 905 A.2d 829, 834 ("The assertion of a prescriptive easement against a municipality is prohibited in great part because the acts of possession that establish prescriptive easements are generally even less obvious than those that establish adverse possession . . . ."). Absent any showing by the plaintiff as to whom or what entity Page's claim was adverse, the plaintiff's argument that Page had a superior right by virtue of a public prescriptive easement fails as a matter of law.

Second, the plaintiff argues that because Amtrak has not established on the summary judgment record that either it or Pan Am Railways (or Boston & Maine) held title to the land where the accident occurred (either fee ownership or right-of-way ownership), Amtrak's authority to operate the Downeaster there was inferior to Page's authority to cross the tracks using the path based on the custom of pedestrians and bicyclists crossing at that location.[12]  But under Maine law, "[a] person may not, without right, stand or walk on a railroad track . . . except by railroad conveyance."[13]  23 M.R.S.A. § 7007(1) (2015).[14]  To the extent that the plaintiff argues that section 7007 is inapplicable because neither

---

[12] The plaintiff also argues that Amtrak "has not provided sufficient evidence . . . that they had the right to travel over the length of track in which Sean Page was struck." Pl.'s Opp'n at 1. But conversely, the plaintiff has failed to show that Amtrak did *not* have the right to travel or operate the Downeaster there.

[13] The term "conveyance" in the statute refers to something that would carry a person, not its real estate title usage.

[14] Violation of section 7007(1) is a civil violation and becomes a Class E crime if there have been three previous violations. Id. § 7007(3).

8

Amtrak nor Pan Am has put forward sufficient evidence to establish ownership of the tracks, I agree with Amtrak that the prohibition in section 7007 does not require Amtrak or Pan Am to prove ownership.  Rather, the plaintiff has established no right on the part of Page to stand or walk on the railroad track where he did when he was struck.  Therefore, I conclude that whatever inadequacies there are in the summary judgment record on the state of title do not demonstrate a duty to Page on Amtrak's part.

Third, during the travel of the summary judgment motion the plaintiff has come to assert that perhaps the City of Biddeford retained some right on behalf of the public to cross the tracks at this location and that Page was crossing pursuant to that right.  But although I have accepted the plaintiff's argument that, for summary judgment purposes, Amtrak has not established who has title to the fee or right of way at the location of the fatality, neither has the plaintiff established that Biddeford retains any interest there.  If Page had some right superior to Pan Am or Amtrak to be on the tracks, it was the plaintiff's burden to establish that, and the plaintiff has failed to do so.

Fourth, the plaintiff argues that Amtrak, as a non-possessor of land, had a "duty to warn, mitigate or prevent injury" because Amtrak's action created "an unreasonable hazard, risk or danger."  Pl.'s Opp'n at 6-7.  The Law Court has recognized that "a non-possessor of land 'who negligently creates a dangerous condition on the land may be liable for reasonably foreseeable harms.'"  Davis v. R C & Sons Paving, Inc., 2011 ME 88, ¶ 19, 26 A.3d 787, 792 (quoting Colvin v. A R Cable Services-ME, Inc., 1997 ME 163, ¶ 7, 697 A.2d 1289, 1290).  But the

"dangerous condition on the land" in this case was the existence of the path and its use by Biddeford pedestrians and bicyclists. There is no evidence that Amtrak created the path or the usage. Even if I accept the plaintiff's contrary argument—that

> [t]he hazard in this case is not the hazard created by the existence of railroad tracks or by pedestrians and bicyclists crossing such tracks but by the Defendant's operation of trains over the tracks in a negligent or willful, wanton and reckless manner in which they would be unable to warn, mitigate or prevent the injury to others after the creation of the danger by their actions,

Pl.'s Opp'n at 7-8—the plaintiff has failed to show negligence by Amtrak.[15] The plaintiff says that Amtrak breached its duty by failing to "plac[e] signage, fencing or operat[e] at a speed in which they could stop the train prior to hitting pedestrian or bicyclists." Pl.'s Opp'n at 7.[16] But the parties agree that Amtrak did not own the tracks or the premises, and the plaintiff has produced no

---

[15] There are two cases, not cited by either party, that are somewhat similar to this case. In Collins v. Maine Cent. R.R. Co., 136 Me. 149, 4 A.2d 100 (1939), the location where the collision occurred had never been "legally established as a street or a highway." Id. at 102. The Law Court ruled that "while an unobjected use by the public of a railroad crossing alone is not enough to establish an implied invitation, there may by facts as to its construction, maintenance, and use that will warrant a jury in finding such an invitation." Id. at 103. The result was that if a jury were to find that the plaintiff was an implied invitee, he had only to show negligence on the part of the railroad, not willful, wanton, or reckless acts—as would be the standard if the plaintiff were a trespasser. Id. In Boothby v. Boston & Me. R.R., 90 Me. 313, 38 A. 155, 156 (1897), the Law Court stated that
> [t]here was no regularly located road over the crossing. But there had been a path or road, more or less traveled with teams, before the location of the railroad across it many years ago. After locating its railroad and purchasing the fee of the land, [the railroad] tried for a while to prevent or limit the travel over the crossing, but finally gave it up, removed all the bars and other obstructions, put up the usual sign of a railroad crossing, and suffered people to use the crossing for passing the track without objection.

Id. at 156. Once again, the consequence was that the railroad had to use due care in approaching the crossing. Id. My ruling on Amtrak's summary judgment motion is not dependent on which common law standard of care applies. (The plaintiff has taken the definitive position that this is not a case of an implied invitee. See Pl.'s Opp'n at 9.)

[16] Because the plaintiff has not argued that Amtrak had a duty to report the existence and use of the pedestrian path to Pan Am, I need not address whether Amtrak had any such duty.

evidence that Amtrak was in control of the premises at the location of the fatal injury or that it had any ability (as a landowner or lessee might have) to change the premises or post warnings.

Therefore, the plaintiff's argument boils down to asserting that the Downeaster used excessive speed, with the result that it could not stop before hitting Page. In that respect, the plaintiff has presented no evidence that the engineer exceeded the speed limit for that portion of the track, no lack of attention, no failure to sound the train's whistle when the engineer saw Page apparently bound on crossing the track, and no negligence in the timing of the decision to apply the emergency brakes. Instead, the argument seems to be that, given the existence of the path and the "custom" of Biddeford pedestrians and cyclists to cross the tracks there, Amtrak had a duty to run its trains so slowly at this specific location that the Downeaster could always come to a complete stop for anyone choosing to cross—*i.e.*, that any walker or bicyclist had superior passage. If Amtrak were the landowner, it would be under no such obligation to stop its trains at the same location for trespassers *or* invitees.[17] I see no basis

---

[17] There is an abundance of Maine cases concerning railroad accidents, and many of them focus on whether the person on the tracks was a trespasser, licensee, or invitee. I find it unnecessary to make that distinction in this case. But there is a common thread throughout the Maine cases. For example:
> It is settled law that at grade crossings the traveler and the railroad company have concurrent rights and mutual obligations. Neither has an exclusive right—"but inasmuch as a railroad train runs on a fixed track, and readily acquires a peculiar momentum, it cannot be expected that when once in motion, it will stop and give precedence to a team approaching on the highway. It cannot be required to do so, except in cases of manifest danger where it is apparent that a collision could not be otherwise avoided. It is the duty of the traveler on the highway to wait for the train. The train has the preference and the right of way."

Ham v. Maine Cent. R.R. Co., 121 Me. 171, 116 A. 261, 262-63 (1922) (quoting Smith v. Maine Cent. R.R. Co., 87 Me. 339, 32 A. 967, 970 (1895)). Moreover, "it is negligence per se for the driver of a conveyance to attempt to cross a railroad track without first looking and listening if there is an opportunity to do so. Id. at 264. Ham was a case where the railroad was found liable

11

for imposing such a duty on Amtrak as the non-owning user of the tracks. Indeed, there is no authority for such a duty on the part of a railroad even at a marked crossing. See Copp v. Maine Cent. R.R. Co., 100 Me. 568, 62 A. 735, 736 (1905) ("It is common knowledge that people frequently walk on railroad tracks, and, if locomotive engineers were bound to stop or decrease speed every time they saw a person on the track, the operation of the railroad would be greatly hindered, to the detriment of the public."). Instead, Maine case law says that the duty of care was on Page:

> One in the full possession of his faculties, who undertakes to cross a railroad track at the very moment a train of cars is passing, or when a train is so near that he is not only liable to be, but is in fact, struck by it, is prima facie guilty of negligence; and, in the absence of a satisfactory excuse, his negligence must be regarded as established.

Hesseltine, 130 Me. 196, 154 A. at 266 (quotation marks omitted). That is the case here, and Sean Page's negligence must be regarded as established. Thus, absent *any* evidence that Amtrak was negligent, let alone evidence that Amtrak was *more* negligent than Page, the plaintiff cannot recover. See 14 M.R.S.A.

---

because it had allowed trees and bushes to grow to an extent that a person approaching a crossing could not see a train. There is nothing in this record to suggest that Page could not see the train, had he looked. In Pelkey v. Canadian Pac. Ltd., 586 A.2d 1248 (Me. 1991), the Law Court approved the following jury instruction: "The court told the jury that both decedent and defendant had a duty to exercise reasonable care under all of the facts and circumstances of the case, but that the train generally has the right of way at crossings." Id. at 1252. The Law Court has also stated:
> Some of [the settled principles in Maine governing a traveler as he approaches an area where a railroad crosses] are as follows: It is the duty of the traveler to wait for the train. The train has the preference and the right of way. A collision at a railroad crossing is prima facie evidence of negligence on the part of the traveler.

Hesseltine v. Maine Cent. R.R. Co., 130 Me. 196, 154 A. 264, 266 (1931) (citation omitted).

§ 156 (2003 & Supp. 2015) ("If [a] claimant is found by the jury to be equally at fault, the claimant may not recover.").[18]

Finally, the plaintiff argues that "23 M.R.S.A. § 7006 if applied as written removes any remedy by due course of law as it precludes any wrongful death suit against the railroad, no matter how egregious their conduct simply because a person may be a trespasser under the law," and that such an outcome violates section 19 of the Maine Constitution.[19] Pl.'s Opp'n at 10. The plaintiff cites no authority for using this state constitutional provision to limit the Maine Legislature's authority to determine the substantive dimensions of a cause of action. Given the clear Law Court precedents I have cited, there is none.

## CONCLUSION

I **GRANT** the defendant's motion for summary judgment

**SO ORDERED.**

**DATED THIS 3RD DAY OF MARCH, 2016**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[18] The plaintiff also tries to create a duty out of an indemnification provision in the operating agreement, which states that
> Amtrak shall indemnify and save harmless Railroad, irrespective of any negligence or fault of Railroad, its employees, agents or servants, or howsoever the same shall occur or be caused, from any and all liability for injury to or death of any person or persons, including but not limited to employees of Railroad, licensees, trespassers and others, and from any and all liability for loss, damage or destruction to any property, real or personal, which arises from activities conducted by and for the account of Amtrak pursuant to these Terms and Conditions.

Pl.'s Ex. 6 at 18(f) (ECF No. 50-6). But any duty that provision creates on Amtrak's part lies toward Pan Am, not Page, and since the plaintiff has not sought to recover against Pan Am, the indemnification provision has no effect.

[19] "Every person, for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." Me. Const. art. I, § 19.

13